**CITY OF MINNEAPOLIS, Hubert H. Humphrey, III, Attorney General, State of Minnesota, Respondents,**

v.

**Helen FISHER, et al., Appellants (C1–93–637), Respondents (C3–93–655),**

**Myong Magnuson, d/b/a Yoshiko's Sauna, Respondent (C1–93–637), Appellant (C3–93–655),**

**Suzy Kotts, d/b/a Yoshiko's Sauna, Respondent.**

**Nos. C1–93–637, C3–93–655.**

Court of Appeals of Minnesota.

Aug. 10, 1993.

Review Denied Sept. 30, 1993.

Robert J. Alfton, Minneapolis City Atty., Richard Scott Reeves, Asst. City Atty., Minneapolis, for City of Minneapolis.

Jocelyn F. Olson, Asst. Atty. Gen., St. Paul, for Hubert H. Humphrey, III.

Stewart R. Perry, Shane C. Perry, Perry, Perry & Perry, Wayzata, for Helen Fisher, et al.

Randall D.B. Tigue, Minneapolis, for Myong Magnuson, d/b/a Yoshiko's Sauna.

Jerrold M. Hartke, South St. Paul, for Suzy Kotts, d/b/a Yoshiko's Sauna.

Considered and decided by PARKER, P.J., and LANSING and SHORT, JJ.

## OPINION

PARKER, Judge.

Appellants challenge the constitutionality of Minnesota's Public Nuisance Law, alleging various violations of constitutional protections. Appellants also contend there was insufficient evidence to support the trial court's determination that their building is a public nuisance, and allege they are entitled to relief from the trial court's abatement order because they evicted the offending tenant prior to its issuance. Finally, appellants claim the trial court's permanent injunction against future operation of sexually oriented businesses unreasonably restricts their use of the property. We affirm.

### FACTS

Appellants Helen Fisher and Un Sil Olson, tenants in common, each own an undivided one-half interest in the property and the building located at 117 Washington Avenue North in Minneapolis. Before commencement of this action, the building contained both residential apartments and a commercial business known as Yoshiko's Sauna. Originally, Fisher and Olson operated Yoshiko's Sauna, each owning 50 percent of the business. Fisher later agreed to sell her interest in the business and its supplies to appellant Myong Magnuson. Fisher leased a portion of the premises to Magnuson. Olson leased her 50 percent interest in the premises and business to appellant Suzy Woo Kotts.

Magnuson and Kotts operated Yoshiko's on alternating days of the week. Although this was a mutually agreed-upon arrangement, the leases do not specify any division as to the use of the property between Magnuson and Kotts. Under the leases, both Magnuson and Kotts have an undivided one-half interest in the equipment, furniture, and personal property.

The trial court found Kotts and Magnuson operated Yoshiko's Sauna as a single business entity, on the following evidence: Yoshiko's had only one published telephone number and advertised only as Yoshiko's Sauna; Yoshiko's employees never identified themselves as agents of separate businesses and there was no variation in Yoshiko's business hours; sauna employees wore low-cut swimsuits or provocative lingerie regardless of who was operating the sauna; and the same or similar services were offered at the same prices. During arrests made on both Magnuson's and Kotts' "days," Yoshiko's employees told undercover agents a basic massage cost

$40 and an "exchange" massage, in which the customer gives a massage to the masseuse, cost $50.

Based on two prostitution convictions, one of which was a gross misdemeanor, the City of Minneapolis brought an action against Fisher, Olson, Magnuson and Kotts, seeking a temporary and permanent injunction and an order of abatement pursuant to Minnesota's Public Nuisance Law, Minn.Stat. §§ 617.80–.87 (1992). Notices of the first two prostitution convictions were mailed by the district court administrator to the owners and interested parties as required by Minn.Stat. § 617.81.

After the City of Minneapolis began this action, there were two additional convictions for prostitution at Yoshiko's Sauna. Notices of these convictions were also sent to the relevant parties. All notices of conviction were mailed shortly after the date of conviction, and the notices were also filed against the property with the city recorder.

Three of the prostitution convictions occurred on days Kotts operated the sauna, and one conviction occurred on Magnuson's day. Neither Fisher, Olson, Magnuson, or Kotts took any action in response to the conviction notices. However, after this nuisance action was commenced, the owners brought a motion to evict Kotts under Minn.Stat. § 617.85. No motion was brought to rescind Magnuson's lease.[1]

By order dated February 24, 1993, the trial court determined that a public nuisance existed at 117 North Washington. Pursuant to the abatement provision of Minn.Stat. § 617.83, the court ordered the portion of the building containing Yoshiko's closed for one year. The court permanently enjoined the defendants from operating or allowing the operation of Yoshiko's Sauna, or any other sauna, massage parlor, "rap parlor," escort service, modeling service, outcall service, or similar business offering sexually oriented services at 117 Washington Avenue North. Appeal is from this order.

## ISSUES

I. Was the evidence sufficient to support the trial court's conclusion that the portion of the building housing Yoshiko's Sauna is a public nuisance?

II. Is Minnesota's Public Nuisance Law unconstitutional on its face?

III. Does Minnesota's Public Nuisance Law violate appellants' due process rights?

IV. Does Minnesota's Public Nuisance Law violate appellants' associational rights?

V. Does Minnesota's Public Nuisance Law violate federal constitutional proscriptions against taking private property without just compensation?

VI. Does the trial court's permanent injunction unreasonably restrict appellants' use of their property?

## DISCUSSION

Minn.Stat. § 617.80–.87 (1992) essentially creates a statutory cause of action for abatement of particular activities that the legislature has defined as public nuisances. Minn.Stat. § 617.81, subd. 2(a), provides in pertinent part:

A public nuisance exists upon proof of three or more misdemeanor convictions or two or more convictions, of which at least one is a gross misdemeanor or felony, within the previous two years for:

(1) acts of prostitution or prostitution-related offenses committed within the building.

Subdivision 3 of section 617.81 requires that notice of a conviction be mailed by the court administrator to the owner of the building where the offense was committed and to all other interested parties. It further requires that the notice be filed with the county recorder.

Section 617.82 permits a city attorney, county attorney, or the attorney general to seek a temporary injunction to enjoin con-

---

1. After the trial court issued a temporary injunction ordering Yoshiko's Sauna to cease business, the sauna changed its name to "M's Health Club" and remained open for business. The trial court found M's Health Club "appears to be the same business under a new name."

duct creating a public nuisance. Section 617.83 requires a court, upon proof of a nuisance as defined in the statute, to issue a permanent injunction and abatement order. The injunction must describe the conduct to be enjoined. *Id.* The abatement order must direct the closing of the building, or part of it, for one year. *Id.*

There are two ways an abatement order can be avoided. First, under section 617.-85, if the conduct resulting in the abatement order involved the acts of a tenant or lessee, the owner of the property can terminate the lease and thus avoid, or have vacated, the abatement order. Alternatively, under section 617.87, the court can release the subject property if the owner posts a bond, not to exceed $50,000, conditioned on the abatement of the nuisance for one year. The owner is then subject to forfeiture under the bond of $1,000 for each day that he or she knowingly permits conduct that resulted in the abatement order to occur during the one-year release period.

### I

■ Appellants argue that the evidence was insufficient to support the trial court's nuisance determination. Specifically, they advance two propositions. First, they contend that because there was only one prostitution conviction during Magnuson's tenancy, it does not meet the statutory requirement of two convictions, at least one of which is a gross misdemeanor. We disagree.

As mentioned above, both Magnuson's and Kotts' leases conveyed an undivided one-half interest in the premises. Either Magnuson or Kotts could have insisted upon occupying the premises on all days of the week. In addition, their sharing of utility bills, one phone number, and representation to the public that Yoshiko's was a single business entity support the trial court's determination that only one business existed and the alternating-days arrangement was simply for convenience. As the trial court stated, it would "exalt form over substance" to divide the business into two separate enterprises or ten-

ancies for purposes of the public nuisance statute. Thus, we believe the alternating-days agreement is an arrangement without legal significance.

Moreover, allowing appellants to prevail on their "two businesses" claim could lead to absurd results. Establishments permitting prostitution could structure their real estate holdings so there would be multiple tenants, thus requiring the city to obtain numerous convictions to obtain an abatement order for a single building. Such an artifice defeats the legislative purpose of the statute. *See* Minn.Stat. § 645.17 (in ascertaining the intent of the legislature, courts should avoid absurd results).

■ Second, appellants maintain they complied with the statute because the owners evicted Suzy Kotts and therefore should not have been subjected to the abatement order. We disagree.

The relevant part of Minn.Stat. § 617.85 provides:

> Upon a finding by the court that the tenant or lessee has maintained or conducted a nuisance in any portion of the building under the control of the tenant or lessee, the court shall order cancellation of the lease or tenancy and grant restitution of the premises to the owner. The court must not order abatement of the premises if the court:
>
> (a) upon the motion of the building owner cancels a lease or tenancy and grants restitution of that portion of the premises to the owner; and
>
> (b) further finds that the acts constituting the nuisance as defined in section 617.81, subdivision 2, were committed in a portion of the building under the control of the tenant or lessee whose lease or tenancy had been canceled pursuant to this section.

Under the leases, both Kotts and Magnuson had a one-half undivided interest in the premises. Given the trial court's finding of joint control of the premises, the owners failed to comply with the statute by not evicting both Magnuson and Kotts. Thus, we conclude the evidence was sufficient to support a nuisance determination and an

abatement order was justified. We next consider the constitutional issues raised.

## II

Appellants claim that Minn.Stat. §§ 617.-80–.87 is unconstitutional on its face because it violates both their due process and freedom of association rights. To prevail on a facial attack, the plaintiff must demonstrate that the challenged law either (1) "could never be applied in a valid manner," or (2) even though it may be validly applied to the plaintiff and others, it nevertheless is so overbroad that it 'may inhibit the constitutionally protected speech of third parties.' *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 12, 108 S.Ct. 2225, 2233, 101 L.Ed.2d 1 (1988) (quoting *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798, 104 S.Ct. 2118, 2125, 80 L.Ed.2d 772 (1984)).

■ The federal courts have rejected a facial challenge to Minn.Stat. §§ 617.80–.87 on both due process and freedom of association grounds. *Hvamstad v. Suhler*, 727 F.Supp. 511, 519 (D.Minn.1989), *aff'd*, 915 F.2d 1218 (8th Cir.1990). Because both the Federal District Court and the Eighth Circuit Court of Appeals determined, as a matter of federal constitutional law, that Minn.Stat. §§ 617.80–.87 does not, on its face, violate due process and freedom of association rights, such a determination is binding on this court when reviewing appellants' federal constitutional claims. *See Cooper v. Aaron*, 358 U.S. 1, 18, 78 S.Ct. 1401, 1409, 3 L.Ed.2d 5, 3 L.Ed.2d 19 (1958) (the federal judiciary is supreme in exposition of the law of the Constitution); *see generally* Laurence H. Tribe, *American Constitutional Law* § 3–4 at 32–36 (2d ed. 1988). Consequently, appellants' facial constitutional challenges must fail.

We next consider appellants' claim that, as applied in this instance, Minnesota's Public Nuisance Law violates their due process and associational rights.

## III

At a minimum, the due process clause requires that deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for a hearing appropriate to the nature of the case. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). In *Hvamstad*, concluding that Minn.Stat. § 617.80–87 did not violate procedural due process, the Federal District Court noted:

> Under the statute, landowners receive both notice and an opportunity to be heard. Section 617.82 provides that no injunction can be issued without a prior show cause notice of hearing to the landowner and an opportunity for the landowner to be heard. Section 617.83 further provides that upon proof of a nuisance as defined in the statute, the court shall issue a permanent injunction and enter an order of abatement. Thus, it is clear that the statute requires a hearing where the landowner has an opportunity to prove that there were no alleged convictions for crimes described in the statute and occurring on the owner's property. Such a hearing satisfies due process requirements.

*Hvamstad*, 727 F.Supp. at 519.

■ In this case, the trial court specifically found that appellants received notices of all the convictions. We also note appellants had a hearing at which they were allowed to challenge whether the convictions occurred on their property. We therefore conclude there were no procedural due process violations.

■ Appellants also contend Minn.Stat. §§ 617.80–.87, as applied in this case, violates their substantive due process rights. In particular, they maintain the abatement law denies them due process because it binds them to prostitution convictions without an opportunity to appear and challenge the underlying facts of those convictions. In other words, they claim to be bound by judgments to which they were not parties. An identical argument was raised and rejected in *Hvamstad*. The Eighth Circuit noted:

> Hence, it is no longer the acts themselves that are the nuisance; the successive convictions are the nuisance. * * *

Those owners who do not abate the criminal activity, and instead allow it to continue on their premises despite notice of convictions therefrom, then face a judicial determination of nuisance and abatement based on the convictions, not the acts.

*Hvamstad*, 915 F.2d at 1220. Similarly, appellants are not held accountable for the *acts* which occurred on their premises but, rather, for their failure to respond appropriately to the notices of prostitution *convictions*.

■ Appellants attempt to distinguish *Hvamstad* by claiming the two undivided property interests require that they be treated as separate entities. In particular, Magnuson contends that, because only one conviction occurred on her "day," the court's order is unconstitutional. *See id.* ("[i]f the statute permitted abatement on evidence of a single conviction with no opportunity for the property owner to deny the underlying act or first to eliminate the illegal act himself, the law would likely neither be reasonable nor constitutional").

The trial court specifically found that both Magnuson and Kotts ran Yoshiko's Sauna. The court's finding is supported by the evidence and therefore not clearly erroneous. *City of Minnetonka v. Carlson*, 298 N.W.2d 763, 766 (Minn.1980). Appellants' contention that the statute, as applied, violates substantive due process lacks merit.

### IV

■ Appellants also allege Minnesota's Public Nuisance Law violates their freedom of association. They maintain Yoshiko's Sauna is being closed not for their own conduct but, rather, solely for their association with others who engage in wrongful conduct. Appellants' argument misconstrues the nature of the statute. Minn. Stat. §§ 617.80–.87 is a public health regulation. It does not regulate with whom an individual associates. Appellants may associate with prostitutes and not be accountable under this statute. It is tolerance of successive prostitution convictions for actions performed on their property that vio-lates the statute. Accordingly, we conclude appellants' associational rights have not been violated.

### V

■ We find appellants' Fifth Amendment taking claim equally unpersuasive. Appellants contend that under *Lucas v. South Carolina Coastal Council*, —— U.S. ——, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), they are entitled to compensation for the one-year "taking" of a portion of their building at 117 North Washington Avenue. We believe appellants' reliance on *Lucas* is misplaced. The *Lucas* court held:

When the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is to leave his property economically idle, he has suffered a taking.

*Id.* at ——, 112 S.Ct. at 2895 (emphasis in original).

Because appellants are still able to rent the residential apartments at 117 North Washington, they have not lost *all* economically beneficial uses of their property. *See id.* at ——, n. 8, 112 S.Ct. at 2895 n. 8 ("It is true that in at least *some* cases the landowner with 95% loss will get nothing, while the landowner with total loss will recover in full") (emphasis in original).

Moreover, because of the temporary nature of the alleged taking, we conclude appellants cannot avail themselves of the *Lucas* rule. In *Woodbury Place Partners v. City of Woodbury*, 492 N.W.2d 258 (Minn.App.1992), *pet. for rev. denied* (Minn. Jan. 15, 1993), *cert. denied,* —— U.S. ——, 113 S.Ct. 2929, 124 L.Ed.2d 679 (1993), property owners brought an action against the city, alleging an unconstitutional taking arising out of a two-year moratorium on development. Rejecting the property owners' argument that *Lucas* required they be compensated for the taking, this court noted:

To invoke the total takings analysis of *Lucas*, the partnership relies exclusively on the stipulation that the moratorium denied all economically viable use of the

property from March 23, 1988 to March 23, 1990. We interpret the phrase "all economically viable use for two years" as significantly different from "all economically viable use" as applied in *Lucas. Id.* at 261. When measured against the value of the property as a whole, the two-year moratorium did not deny the partnership "all economically viable use of its property." *Id.* at 262. Likewise, the one-year abatement period of a portion of appellants' building did not constitute a taking requiring compensation under the Fifth Amendment.

## VI

■ Appellants also argue the trial court erred by permanently enjoining them from operating or allowing the operation of "any other sauna, massage parlor, rap parlor, escort service, modeling service, outcall service, or similar business offering sexually oriented services" at 117 North Washington. Appellants contend these are legitimate businesses and, after the one-year abatement period, they should be allowed to operate their building in any lawful manner.

We believe appellants misconstrue the nature of the trial court's order. The phrase "sexually oriented services" modifies *all* the aforementioned specified businesses. In other words, two things must be established to find a violation of the injunction: (1) that the business being operated is one of the proscribed businesses or one otherwise known to facilitate prostitution; and (2) that the business offers sexually oriented services. Because any legitimate business which does not offer sexually oriented services can be operated at 117 North Washington Avenue after the one-year abatement period, we conclude the injunction does not unreasonably restrict appellants' use of their property.

## DECISION

The evidence is sufficient to support the trial court's decision that appellants' property constituted a public nuisance. Minnesota's Public Nuisance Law does not, on its face or as applied, violate constitutionally protected due process and associational rights. The trial court's abatement order does not constitute a taking requiring compensation under the Fifth Amendment. Finally, we hold that the trial court's order does not unreasonably restrict appellants' use of their property.

**Affirmed.**