# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| OCEAN FLEMING,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 62167 |
| OCEAN LASHAWN FLEMING,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 66801 |



FILED

AUG 10 2016

## *ORDER OF AFFIRMANCE*

These are consolidated appeals from a judgment of conviction on multiple counts of pimping and pandering and from an order denying a motion for new trial based upon newly discovered evidence. Eighth Judicial District Court, Clark County; Michael Villani, Judge. The parties are familiar with the facts and we do not recite them here except as necessary to the disposition of these appeals.

### I.

In 2011, the State charged appellant Ocean Fleming with four counts of living with a prostitute, among other charges. Fleming conceded guilt as to some charges, such as pandering, living off the earnings of a prostitute, and domestic violence, but disputed others, including the charges of living with a prostitute. The jury convicted Fleming on all contested counts.

### A.

On direct appeal, Fleming challenges his conviction, principally arguing that NRS 201.360(1)(e), which makes a felon of anyone

SUPREME COURT
OF
NEVADA

(O) 1947A

16-24776

who "[l]ives with . . . a common prostitute" (lives-with clause), is unconstitutionally overbroad because it infringes on the freedom of intimate associational expression safeguarded by the First Amendment and, within its sweep, encompasses a substantial number of unconstitutional applications. Our review is de novo, *Ford v. State*, 127 Nev. 608, 612, 262 P.3d 1123, 1126 (2011), and we affirm.

The United States Supreme Court has identified two types of associational rights that the Constitution protects: freedom of intimate association and freedom of expressive association. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984). The freedom of intimate association is "an intrinsic element of personal liberty" as it involves the choice "to enter into and maintain certain intimate human relationships," such as "marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *Id.* at 617, 619-20 (citations omitted). Expressive association, on the other hand, is safeguarded to allow individuals to "engag[e] in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 618.

Courts analyzing the differences between intimate and expressive association have held that expressive association is rooted in the First Amendment, whereas intimate association stems from the substantive due process rights of the Fourteenth Amendment. *See, e.g.*, *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993) ("We believe the familial right of association is properly based on the 'concept of liberty in the Fourteenth Amendment.' . . . The freedom of intimate association is a substantive due process right, as is its subset, the familial right of association."); *IDK, Inc. v. Cty. of Clark*, 836 F.2d 1185, 1192 (9th Cir.

1988) ("In protecting 'certain kinds of highly personal relationships,' the Supreme Court has most often identified the source of the protection as the due process clause of the fourteenth amendment, not the first amendment's freedom to assemble." (citation omitted) (quoting *Roberts*, 468 U.S. at 618)); *Bailey v. City of Nat'l City*, 277 Cal. Rptr. 427, 434 (Ct. App. 1991) (noting that challenged rule regulates intimate, not expressive, association, and concluding that intimate association is outside the purview of the First Amendment and rather invokes liberty interests, rendering the overbreadth doctrine inapplicable); *City of Bremerton v. Widell*, 51 P.3d 733, 740 (Wash. 2002) ("The right of expressive association stems from the First Amendment, guarding those activities protected by that amendment: speech, assembly, petition for the redress of grievances, and the exercise of religion. The right of 'intimate association' is derived from the due process concepts of the Fourteenth Amendment and the principles of liberty and privacy found in the Bill of Rights." (citation omitted)).

While the Supreme Court has yet to address whether the overbreadth doctrine applies to the freedom of intimate association, it has limited the overbreadth doctrine to First Amendment challenges. *See Arizona v. United States*, 567 U.S. ___, ___, 132 S. Ct. 2492, 2515 (2012) ("The fact that [a law] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *see also Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (referring to overbreadth as "[t]he First Amendment doctrine of overbreadth," which remedies "the threat of enforcement of an overbroad

law [that] may deter or 'chill' constitutionally protected speech"); *Scott v. First Judicial Dist. Court*, 131 Nev., Adv. Op. 101, 363 P.3d 1159, 1162 (2015) ("[T]he overbreadth doctrine invalidates laws that infringe upon First Amendment rights." (internal quotation marks omitted)).

Despite invoking the overbreadth doctrine to invalidate his conviction of living with a prostitute, Fleming neither acknowledges nor briefs whether said doctrine properly extends beyond rights of expressive association to rights of intimate association. As the law seemingly provides that intimate association is rooted in the Fourteenth Amendment, while the overbreadth doctrine is limited to First Amendment protections, we decline sua sponte to extend the First Amendment overbreadth doctrine to the facial overbreadth challenge articulated by Fleming on direct appeal. *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973) (referring to the overbreadth doctrine as "strong medicine" that is to be employed "sparingly and only as a last resort"); *see Griffin*, 983 F.2d at 1547 (concluding that the familial right of association is derived from the substantive due process right to privacy in the Fourteenth Amendment, which requires a Fourteenth Amendment balancing of interests for alleged violations); *Hvamstad v. Suhler*, 727 F. Supp. 511, 517 (D. Minn. 1989) ("Given the limited scope of the overbreadth doctrine and the Supreme Court's analysis of the foundations of the freedom of association, this court concludes that one cannot launch an overbreadth attack based upon the freedom of intimate association."); *Bailey*, 277 Cal. Rptr. at 434 (rejecting overbreadth claim for violation of intimate association, stating: "While a liberty interest is protected, it does not enjoy the special solicitude accorded First Amendment concerns, including benefits of the facial overbreadth doctrine"); *City of Bremerton*,

51 P.3d at 742 (rejecting intimate association overbreadth argument as party had "not presented any persuasive basis upon which we might extend the overbreadth doctrine to a claim of right not arising under the First Amendment"). *But see State v. Holiday*, 585 N.W.2d 68, 71 n.1 (Minn. Ct. App. 1998) ("We believe, however, that it is appropriate to apply the overbreadth doctrine to such a sweeping limitation on the freedom of [intimate] association.").

Although we are sympathetic to Fleming's argument that the lives-with clause may implicate familial relationships, Fleming has failed to provide a persuasive legal basis to extend the First Amendment overbreadth doctrine to the freedom of intimate association or otherwise establish an adequate legal basis for his claim.[1] While some cases have extended the overbreadth doctrine to intimate association, *see, e.g.,*

---

[1]Fleming argues that "the strict criminalization of sharing a residence, knowingly or unknowingly, with anyone who is a prostitute, clearly constitutes more than a 'minor intrusion' on the First Amendment right of association." Thereafter, Fleming recognizes that the Fourteenth Amendment's substantive due process rights protect the freedom of intimate association, yet he analyzes his claim under the overbreadth doctrine, not under the Fourteenth Amendment. Fleming also challenges the lives-with clause as unconstitutionally vague, but his argument is procedurally defective as Fleming never alleges that his hypothetical violations applied to him and vagueness challenges may not be raised by "[o]ne to whose conduct a statute clearly applies." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7 (1982) (internal quotation marks omitted); *see United States v. Williams*, 553 U.S. 285, 304 (2008); *Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 512, 217 P.3d 546, 553 (2009). Although a different iteration of a vagueness challenge may be brought where a statute lacks sufficient standards such that it encourages arbitrary and discriminatory enforcement, *Kolender v. Lawson*, 461 U.S. 352, 357 (1983), Fleming's challenge fails, again procedurally, for want of adequate briefing on this point.

*Holiday*, 585 N.W.2d at 71 n.1, these cases are in the minority of jurisdictions, which is not enough to demonstrate that the district court committed reversible error. And, as applied to Fleming, the statute does not suffer the arguable constitutional infirmities he posits as to other, hypothetical persons. For these reasons, we reject Fleming's challenge to his charges for living with a prostitute.

## B.

Beyond this principal constitutional question, Fleming raises an array of alleged nonconstitutional errors involving the district court's admission of evidence, as well as the supposed lack of evidence supporting certain of his convictions. *See Newman v. State*, 129 Nev., Adv. Op. 24, 298 P.3d 1171, 1181 (2013) (characterizing the erroneous admission of certain evidence as nonconstitutional error). Specifically, he argues that (1) the State improperly admitted character evidence when it elicited testimony that Fleming had previously been involved in a domestic violence incident and that Fleming was not permitted to own a firearm (an oblique reference to his prior felony conviction); (2) the State's offer of Facebook and email exchanges between Fleming and various individuals was improper hearsay, as was the State's witness testimony that Millard had previously told him that Fleming was her pimp and that he beat her; (3) the various photographs that the State proffered in which Fleming posed with money, jewelry, cars, and guns were both prejudicial and irrelevant; and (4) a State witness offered improper lay-opinion testimony when he "interpreted" phone calls between a then-incarcerated Fleming and various friends. But whether or not these arguments have merit, any error would be harmless because none of these errors had a "substantial and injurious effect or influence in determining the jury's verdict," *Tavares*

*v. State*, 117 Nev. 725, 732, 30 P.3d 1128, 1132 (2001) (internal quotation marks omitted), *holding modified by Mclellan v. State*, 124 Nev. 263, 182 P.3d 106 (2008), and we do not view any errors that may have occurred as cumulative so as to warrant reversal inasmuch as the question of Fleming's guilt was not a close one, *see Rose v. State*, 123 Nev. 194, 211, 163 P.3d 408, 419 (2007) (stating that factors to be considered in a cumulative error analysis are "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged" (internal quotation marks omitted)).

Fleming's other claims of error also do not form a basis for reversal. As to the offenses against Vineyard—pandering and furnishing transportation—Fleming stresses heavily that Vineyard did not testify at trial. But neither Vineyard's testimony, nor any of the evidence disputed above, was necessary to sustain his convictions for these counts. Fleming also challenges the charge of strangulation against Gruda. While he conceded that he battered her, he argues that his conviction of strangulation cannot be sustained because Gruda never lost consciousness and sustained no lasting injuries. Gruda's testimony and that of an expert, however, made clear that Fleming lifting Gruda off the ground by her neck, which could have impacted her oxygen flow to her brain, threatening her life. *See* NRS 200.481(1)(h).

Fleming also challenges the sufficiency of the evidence on the pandering, living with a prostitute, assault, and first-degree kidnapping charges.

> The standard of review for sufficiency of the evidence in a criminal case is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, after viewing the evidence in the light most

favorable to the prosecution. A reviewing court will not disturb a verdict on appeal if it is supported by substantial evidence.

*Gordon v. State*, 121 Nev. 504, 508, 117 P.3d 214, 217 (2005) (quoting *Domingues v. State*, 112 Nev. 683, 693, 917 P.2d 1364, 1371 (1996)). In this case, substantial evidence supported the jury verdict.

Fleming argues that he would not have been convicted were it not for the prejudice he suffered from irrelevant testimony by the State's expert on "pimp subculture," Detective Baughman, and two instances of the prosecutor's misconduct. Though we recognize that Baughman made statements that were both irrelevant and inflammatory, Fleming did not object to Baughman's testimony, and we cannot say that any error by the district court in allowing Baughman to testify as he did was plain. *See Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008); *see also Ford v. State*, 127 Nev. 608, 625 n.9, 262 P.3d 1123, 1134 n.9 (2011) (declining to hold that testimony on the pimp culture is *per se* inadmissible). In any case, even if the evidence were admitted in error, we are not persuaded that Fleming's guilty verdicts rested on Baughman's testimony rather than the plethora of evidence presented at trial, *Smith v. State*, 111 Nev. 499, 506, 894 P.2d 974, 978 (1995), or that the alleged prosecutorial misconduct was so prejudicial or pervasive "that no other reasonable explanation for the verdict exists." *Grosjean v. Imperial Palace, Inc.*, 125 Nev. 349, 364, 212 P.3d 1068, 1079 (2009) (internal quotation marks omitted); *Valdez*, 124 Nev. at 1192, 196 P.3d at 479.

Next, Fleming challenges the district court's rejection of three of his requested jury instructions. Two related to Fleming's claim that he acted in defense of his unborn child when he committed first-degree kidnapping because he needed to protect his unborn child from the

mother's pre-natal use of drugs (citing NRS 193.250, 200.210) and the third required the State to prove venue in which the prostitution occurred (citing NRS 171.035). "[W]hile the defense has the right to have the jury instructed on its theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be, a defendant is not entitled to an instruction which incorrectly states the law . . . ." *Barnier v. State,* 119 Nev. 129, 133, 67 P.3d 320, 322 (2003) (internal quotation marks and footnotes omitted). Thus, we need not reach whether NRS 200.210 would allow Fleming to act in defense of his unborn child because NRS 193.250 does not establish that defense of others is available as a defense to first-degree kidnapping. *See Sheriff v. Encoe,* 110 Nev. 1317, 1320, 885 P.2d 596, 598 (1994). And neither NRS 171.035, nor the pandering statute NRS 201.300, requires that the prostitute being pandered have engaged in prostitution within Clark County.

Finally, Fleming argues that the district court abused its discretion by denying him access to various witnesses' "entire arrest histories," but fails to support that argument with relevant law. He cites *Corbin v. State,* 111 Nev. 378, 892 P.2d 580 (1995), but there we only held that the defense did not have to present evidence of a witness's felony conviction in order to use the conviction to impeach under NRS 50.095, reasoning that the defense "does not have ready access" to a witness's prior felony conviction. *Id.* at 382-83, 892 P.2d at 582-83. This practical recognition of the defense's limited ability to obtain a witness's felony conviction record does not equate to recognizing a right for defendants to access witnesses' entire arrest histories; to the contrary, it actually undercuts Fleming's claim—if, as we recognized in *Corbin,* a defendant has no right to access a witness's felony convictions, he certainly is not

entitled to details of the underlying arrests, much less that witness's entire arrest record. Thus, in light of the foregoing, we affirm, as there were no errors based on Fleming's arguments in his direct appeal.

## II.

Fleming also appeals from an order denying his motion for new trial based upon newly discovered evidence. This court reviews a district court's decision on whether a new trial is warranted based on the ground of newly discovered evidence for an abuse of discretion. *Sanborn v. State*, 107 Nev. 399, 406, 812 P.2d 1279, 1284 (1991). Here, Fleming presented what he asserts was newly discovered evidence consisting of affidavits from a victim (Vineyard) and a witness (Davey), the recantation of a victim (Millard), and juror misconduct. After reviewing the evidence, we conclude that the Vineyard and Davey affidavits do not constitute newly discovered evidence meriting a new trial under *Hennie v. State*, 114 Nev. 1285, 968 P.2d 761 (1998), because Fleming has not shown that the evidence was newly discovered, that he was reasonably diligent in pursuing the evidence, or "that a different result is probable on retrial." *Id.* at 1289-90, 968 P.2d at 764 (internal quotation marks omitted). The third affidavit, a recantation of Millard's trial testimony, is also not considered newly discovered evidence under *Callier v. Warden, Nevada Women's Correctional Center*, 111 Nev. 976, 990, 901 P.2d 619, 627-28 (1995). Millard's recent contention that her trial testimony was false and coerced does not explain why two neutral witnesses and photographic evidence corroborated her trial testimony that Fleming attacked her. As such, Millard's affidavit fails to show that her trial testimony was false.

Finally, Fleming argues he is entitled to a new trial based on the indictment of Antonio Woods for jury tampering. During Fleming's

trial, his associate, Woods, took photographs of several jurors. One juror immediately reported the incident to the marshal. Thereafter, the district court canvassed the juror and asked whether it would affect her ability to be impartial, to which she answered in the negative. Fleming claims that the subsequent indictment of Woods for jury tampering, in which that same juror testified to the grand jury that she was scared, constitutes newly discovered evidence. The juror's testimony is not newly discovered evidence as Fleming was aware of the Woods incident during trial, he chose not to canvass the juror on whether the alleged tampering intimidated or scared her, he did not object to this juror, or ask the district court for time to conduct additional research. Thus, even assuming, without deciding, that claims of juror misconduct qualify as proper grounds for relief in a motion for a new trial based upon newly discovered evidence, we conclude that Fleming's motion was properly denied. Accordingly, we

ORDER the judgment of conviction and order denying the motion for a new trial AFFIRMED.

_____, C.J.
Parraguirre

_____, J.
Pickering

cc: Hon. Michael Villani, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SAITTA, J., concurring in part and dissenting in part:

Although I agree with my colleagues for the most part, I dissent as to the overbreadth challenge to the lives-with clause in NRS 201.360(1)(e). I acknowledge and share my colleagues' concerns regarding the overbreadth challenge to the lives-with clause in NRS 201.360(1)(e). There is no denying that the Supreme Court has not addressed whether the overbreadth doctrine, which historically has protected First Amendment rights, should be extended to protect the freedom of intimate association, which may be rooted in the Fourteenth Amendment.[1] Nor can I take issue with my colleagues' concern that Fleming did not address this distinction and provide a cogent basis on which the overbreadth doctrine should be extended in the fashion required to credit his challenge to the lives-with clause in NRS 201.360(1)(e).

But, I also cannot ignore the provision's exceedingly broad impact on the freedom of intimate association. Its plain language makes it a felony for any person to "[l]ive[ ] with . . . a common prostitute." NRS 201.360(1)(e). To say it is a sweeping limitation on the freedom of intimate association is to state the obvious—as long as the lives-with clause is on the books in Nevada, no one may live with a prostitute without committing a felony, not even a prostitute's closest family members or spouse. I see no limiting construction that mitigates that broad sweep. As my colleagues acknowledge, at least one other court has

---

[1]I note that the source of the right to intimate association, be it the First Amendment or the Fourteenth Amendment, is not settled. *See Piscottano v. Murphy*, 511 F.3d 247, 278 (2d Cir. 2007) ("[T]he source of the intimate association right has not been authoritatively determined." (internal quotations omitted)).

been willing to apply the overbreadth doctrine to "sweeping limitation[s] on the freedom of association" because "the freedom of association [is] a constitutional right closely associated with First Amendment protections." *State v. Holiday*, 585 N.W.2d 68, 70-71 & n.1 (Minn. Ct. App. 1998). While that may be a minority position, I believe it is a sound one, and in the face of a statute that substantially and seriously impinges upon the freedom of intimate association, I am unwilling to wait for it to become a majority position or for a decision by the United States Supreme Court. The lives-with clause in NRS 201.360(1)(e) is unconstitutionally overbroad, and we should recognize it as such.

I also am troubled by the testimony provided by the State's expert on "pimp subculture," but ultimately I concur in my colleagues' decision as to this issue. This testimony was clearly inflammatory and, given the other evidence presented, it may have been irrelevant. Of particular concern are the expert's references, both direct and implied, to race—for instance his explanation that prostitutes "don't ever talk to another black man. Don't look a black man in the eye because . . . he could possibly be a pimp." It is difficult to fathom how this testimony did not affect the jury's verdict. Nevertheless, because Fleming failed to object to Detective Baughman's testimony at trial, the question is whether the error was plain or clear and whether Fleming was actually prejudiced by the testimony. *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003). Given the plethora of evidence that was presented at trial, I reluctantly defer to my colleagues' conclusion on this issue.

_____, J.
Saitta