**CITY OF WEST ST. PAUL,
Respondent**

v.

**Alice Jane KRENGEL, Appellant.**

**No. A07–310.**

Court of Appeals of Minnesota.

May 6, 2008.

Pierre N. Regnier, Susan Steffen Tice, Jardine, Logan & O'Brien, P.L.L.P., Lake Elmo, MN, for respondent.

Michael Hagedorn, and Julia Althoff, Southern Minnesota Regional Legal Services, St. Paul, MN, for appellant.

Considered and decided by JOHNSON, Presiding Judge; HUDSON, Judge; and CRIPPEN, Judge.*

**O P I N I O N**

JOHNSON, Judge.

Alice Jane Krengel has been a homeowner in the City of West St. Paul for

approximately 20 years. She has been an extreme annoyance to her neighbors. For that reason, the district court issued injunctions pursuant to the Public Nuisance Law that prevented Krengel from living at or using her homestead property for one year.

Krengel appeals, arguing that the permanent injunction was improper because the public nuisance was not ongoing when the city sought and obtained the permanent injunction. We interpret the Public Nuisance Law to require the city to prove that two or more incidents of nuisance activity, as defined by statute, occurred within the 12-month period preceding the hearing on the city's request for the permanent injunction. We thus conclude that the district court erred because the city's evidence of nuisance activity consisted solely of incidents occurring 15 or more months before the hearing on the city's request for the permanent injunction. Therefore, we vacate the permanent injunction.

**FACTS**

**A. Background**

Krengel has owned a house on Allen Avenue in West St. Paul for approximately 20 years. The house has been her residence during that time period, except for a one-year period between August 2006 and August 2007, when she was prohibited from using the property by a temporary injunction and by the permanent injunction that she challenges in this appeal.

The district court found that, over a six-year period, Krengel's neighbors "have been subjected to intoxicated persons at her home, yelling, arguing with one anoth-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

er, and screaming obscenities, at all hours of the days and nights." For example, a next-door neighbor witnessed Krengel's guests urinating on the neighbor's bushes. Another neighboring family feared for the safety and welfare of its teen-aged daughter because Krengel's boarders and guests made lewd and suggestive comments to her when she walked past Krengel's house. The police department received 29 reports regarding the property in a period of approximately one year. Krengel has not challenged these findings of facts. Furthermore, Krengel twice pleaded guilty to the misdemeanor charge of public nuisance, in violation of Minn.Stat. § 609.74(1) (2004) and Minn.Stat. § 609.745 (2004), for incidents occurring on November 14, 2004, and April 10, 2005.

The incidents described above occurred between September 28, 2004, and July 12, 2005. Those incidents prompted the city attorney to send a letter to Krengel on July 29, 2005, to put her on notice that if she did not either abate the nuisance or enter into an abatement plan with the city, the city would seek an injunction pursuant to the Public Nuisance Law. The letter described 13 objectionable incidents. Among them were several incidents in which Krengel's guests were taken to a detoxification unit or to a hospital because of high blood-alcohol content; an incident in which two intoxicated males assaulted one another with hammers, with resulting injuries; and an incident in which two persons argued loudly in Krengel's yard while pushing and slapping each other. The city attorney informed Krengel that the city would commence an action in district court to enjoin the public nuisance if Krengel did not either "abate the nuisance or enter into an agreed abatement plan *within 30 days of service of this Notice.*"

After receiving the city's July 29, 2005, letter, Krengel and the city entered into an abatement plan. Krengel signed the two-page document on August 17, 2005. The city council ratified it by a 6–0 vote on August 22, 2005, and the plan subsequently was signed by the mayor. The operative terms of the abatement plan (1) prohibited Krengel from using alcohol or controlled substances; (2) prohibited Krengel from keeping alcohol, alcohol containers, or controlled substances at the property; (3) prohibited Krengel from allowing more than three unrelated persons to reside at the property; (4) permitted certain police officers to make "random visits" to her home; (5) permitted certain police officers to administer random preliminary breath tests to Krengel; and (6) required Krengel to attend 90 meetings of Alcoholics Anonymous within 120 days and to submit verification of her attendance to the city attorney's office. The abatement plan was to be in effect for one year. In the final paragraph of the plan, Krengel acknowledged "that any violation of the terms and conditions of the Abatement Plan will allow the City Council to pursue injunctive action as stated in the Notice of Injunctive Action."

During the subsequent year, Krengel apparently stopped the egregious conduct that had prompted the city to send the July 29, 2005, letter, but she did not comply with the abatement plan. The district court found that Krengel violated the plan on seven occasions. First, on September 17, 2005, Krengel purchased a bottle of rum at a liquor store. When police officers went to her home to investigate, Krengel refused to admit them. Second, on March 16, 2006, one of Krengel's boarders purchased a 12–pack of beer at a liquor store and walked directly to Krengel's home. Investigating police officers who went to Krengel's home detected alcohol on Krengel's breath. Third, on May 6, 2006, Krengel refused to admit a police officer who sought to conduct a random

inspection pursuant to the abatement plan. Fourth, on May 7, 2006, Krengel again refused to admit a police officer who sought to conduct a random inspection pursuant to the abatement plan. The officer detected the odor of alcohol on Krengel's breath as well as slurred speech when she answered the door. Fifth, on June 29, 2006, an anonymous caller reported to police that Krengel had been drinking. When an officer went to Krengel's home, Krengel was sleeping in a bedroom. Sixth, on July 28, 2006, an officer saw Krengel walking on the sidewalk near her home and into her home while carrying a bottle that Krengel later admitted contained vodka. Krengel consented to a preliminary breath test, which revealed an alcohol concentration of 0.253. The officer's report stated that the "house was very quiet" and Krengel was "very cooperative." Seventh, on August 4, 2006, an officer saw Krengel walk into a neighborhood liquor store and, after entering the store, witnessed Krengel buying a bottle of vodka.

In response to Krengel's violations of the abatement plan, the city sent Krengel a second letter on June 27, 2006, that again provided notice of the city's intent to seek injunctive relief. The letter set forth the first four incidents described above that constituted violations of the abatement plan and also recited the same 13 incidents that were described in the first notice in July 2005. The letter concluded with language similar to the first letter—that the city would commence an action in district court to enjoin the nuisance if Krengel did not either "abate the nuisance or enter into an agreed abatement plan *within 30 days of service of this Notice.*"

### B. District Court Action

On July 31, 2006, thirty-four days after its second notice, the city commenced an action in the Dakota County District Court. The city promptly moved for a temporary injunction to prohibit Krengel from maintaining a nuisance at her property. On August 3, 2006, the district court conducted a hearing on the motion. On August 10, 2006, the district court issued an order granting the motion and enjoining Krengel from residing at the property, from engaging in nuisance activity at the property, and from entering the property without prior approval of the police department. The order required Krengel to vacate her property by August 5, 2006, which indicates that the district court may have granted the motion orally at the hearing.

The city then proceeded to seek a permanent injunction. The district court conducted a hearing on October 17, 2006. The district court issued findings of fact and conclusions of law in an order that was signed by the district judge on November 15, 2006, and filed with the court administrator on November 20, 2006. The order stated that Krengel is enjoined from occupying her home for one year from the date of the issuance of the temporary injunction, except that she may "enter the premises on five days from the hours of 8 a.m. to 5 p.m. to pack up personal belongings and to secure valuables and other items." In an affidavit that Krengel filed with the district court in August 2007, she stated that she lived at a homeless shelter for most of her year-long expulsion.

Krengel filed a timely notice of appeal from the district court's permanent injunction. The temporary injunction is not at issue in this appeal.

### C. Post–Judgment Motions

After the district court issued the permanent injunction, Krengel made three attempts to stay enforcement of the injunction while she pursued this appeal. First, on December 13, 2006, Krengel filed a

petition for a writ of prohibition with this court, seeking to preclude the district court from enforcing the permanent injunction. This court denied the petition in an order dated January 16, 2007. Second, on February 14, 2007, Krengel filed a motion in the district court to stay enforcement of the permanent injunction pending appeal. The district court conducted a hearing on February 27, 2007, and denied the motion in an order dated March 21, 2007. Third, on May 3, 2007, Krengel asked this court to review and reverse the district court's denial of her motion for a stay. This court denied Krengel's motion in an order dated May 22, 2007.

On July 26, 2007, shortly before the expiration of the permanent injunction, the city moved the district court to extend the permanent injunction for six additional months. After an August 9, 2007, hearing, the district court denied the motion on the ground that the city had not given Krengel the notice required by Minn.Stat. § 617.81, subd. 4 (2006).

On August 15, 2007, after this appeal had been fully briefed and was awaiting oral argument, the city filed a motion to dismiss the appeal as moot because the permanent injunction had expired. On August 28, 2007, this court issued an order deferring the motion to the panel considering the merits of the appeal.

## ISSUES

I. Does Krengel's appeal present a justiciable controversy even though the permanent injunction has expired?

II. Under Minn.Stat. §§ 617.81–.87, may a district court issue a permanent injunction if the last incident of statutorily defined nuisance activity occurred more than 12 months before the hearing on the city's request for a permanent injunction?

## ANALYSIS

### I.

■ The city has moved to dismiss the appeal as moot, arguing that there no longer is a live controversy because the permanent injunction has expired. "The issue of whether a cause of action is moot is a question of law, which we review de novo." *In re Risk Level Determination of J.V.,* 741 N.W.2d 612, 614 (Minn.App.2007), *review denied* (Minn. Feb. 19, 2008).

■ A case is moot if there is no justiciable controversy. *Kahn v. Griffin,* 701 N.W.2d 815, 821 (Minn.2005); *State ex rel. Sviggum v. Hanson,* 732 N.W.2d 312, 321 (Minn.App.2007). A justiciable controversy is one that "involves definite and concrete assertions of right," *J.V.,* 741 N.W.2d at 614, and "allows for specific relief by a decree or judgment of a specific character as distinguished from an advisory opinion predicated on hypothetical facts," *Sviggum,* 732 N.W.2d at 321 (citing *Holiday Acres No. 3 v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis,* 271 N.W.2d 445, 447 (Minn.1978)). Appellate courts "decide only actual controversies and avoid advisory opinions." *In re McCaskill,* 603 N.W.2d 326, 327 (Minn.1999). Thus, when there is "no injury that a court can redress, the case must be dismissed for lack of justiciability," except in certain "narrowly-defined circumstances." *Sviggum,* 732 N.W.2d at 321.

■ A matter will not be dismissed as moot, however, if (1) the issue raised is capable of repetition yet evading review or (2) collateral consequences attach to the otherwise moot ruling. *McCaskill,* 603 N.W.2d at 327. At oral argument, Krengel abandoned her argument concerning the second exception. She argues only that we should apply the first exception, that the propriety of the permanent injunction is capable of repetition yet evad-

ing review. This exception is well established. *See, e.g., Kahn,* 701 N.W.2d at 821; *State ex rel. Archabal v. County of Hennepin,* 505 N.W.2d 294, 297 (Minn.1993); *State ex rel. Doe v. Madonna,* 295 N.W.2d 356, 361 (Minn.1980). The capable-of-repetition-yet-evading-review exception may apply if " '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.' " *Kahn,* 701 N.W.2d at 821 (quoting *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975)). The rationale of the exception is that to " 'abandon the case at an advanced stage may prove more wasteful than frugal.' " *Sviggum,* 732 N.W.2d at 322 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 192, 120 S.Ct. 693, 710, 145 L.Ed.2d 610 (2000)).

## A. Duration of Challenged Action

■ We first must determine whether the permanent injunction "was in its duration too short to be fully litigated prior to its cessation or expiration." *Kahn,* 701 N.W.2d at 821. The permanent injunction was in effect for approximately nine months before it expired. This period of time was too short to allow the judicial process to reach conclusion. In fact, the oral argument in this case was scheduled for a date approximately six months after the permanent injunction had expired.

The procedural posture of this case is comparable to that of *Madonna,* in which the plaintiffs challenged their confinements while awaiting a hearing to determine whether they should be committed to mental institutions. 295 N.W.2d at 358. The plaintiffs filed petitions for habeas corpus during their pre-hearing confinements, which lasted only a matter of

weeks, but the petitions were not adjudicated before their pre-hearing confinements ended. *Id.* at 358–59. Approximately two and one-half years later, the supreme court held that the case was not moot, reasoning that "some method of review must exist." *Id.* at 361; *see also Burkstrand v. Burkstrand,* 632 N.W.2d 206, 208 n. 2 (Minn.2001) (holding that challenge to one-year order for protection was not moot even though it had expired); *Davis v. Davis,* 297 Minn. 187, 188 n. 1, 210 N.W.2d 221, 223 n. 1 (1973) (holding that challenge to one-year residency requirement for divorce action was not moot even though plaintiff had since satisfied requirement). Thus, the first requirement of *Kahn* has been satisfied.

## B. Reasonable Expectation of Repetition

The second requirement of *Kahn* is that there is "a reasonable expectation that the same complaining party would be subjected to the same action again." 701 N.W.2d at 821 (quotation omitted). Throughout its brief, the city emphasizes the persistent nature of the objectionable situation at Krengel's property and the resources that the city's police department has been forced to expend in responding to complaints from Krengel's neighbors as well as calls for assistance from Krengel herself when guests or boarders are out of control. The city has vigorously pursued this legal action as a means of preventing future problems. It appears that the city is likely to continue to pursue a legal solution to the situation that exists at Krengel's property.

In fact, the city has sought to apply the Public Nuisance Law to Krengel on a second occasion. When the permanent injunction was due to expire in August 2007, the city sought to extend the injunction for an additional six months pursuant to the

Public Nuisance Law. The district court denied relief on the ground that the city had not given Krengel the written notice required by Minn.Stat. § 617.81, subd. 4 (2006). The city's repeated efforts to enforce the Public Nuisance Law against Krengel "undercut[ ] [the city's] claim that repetition of the governmental action in this case is remote and speculative as to" Krengel. *Madonna,* 295 N.W.2d at 361.

These facts lead to the conclusion that there is "a reasonable expectation" that Krengel may be "subjected to the same action again." *Kahn,* 701 N.W.2d at 821 (quotation omitted). We need not consider the possibility that another person in Minnesota who owns or possesses real property may become a defendant in a civil action in which a city, a county, or the state seeks an injunction pursuant to the Public Nuisance Law. *See id.* at 823 (considering whether same issue may arise in future with respect to non-parties). Thus, the second requirement of *Kahn* has been satisfied.

## C. Summary

■ Both of *Kahn's* requirements have been satisfied. Nonetheless, mootness is " 'a flexible discretionary doctrine, not a mechanical rule that is invoked automatically.' " *Jasper v. Commissioner of Pub. Safety,* 642 N.W.2d 435, 439 (Minn.2002) (quoting *State v. Rud,* 359 N.W.2d 573, 576 (Minn.1984)).

Although we naturally hesitate to make an exception to mootness, it is appropriate to do so here. It is significant that Krengel was unable to obtain appellate review of the permanent injunction before it expired despite having made three vigorous efforts to do so. First, she petitioned for writ of prohibition with this court, seeking to prohibit the district court from enforcing the permanent injunction. Second, she moved the district court for a stay of en-

forcement of the permanent injunction pending appeal. And third, she asked this court to review the district court's denial of her motion for a stay. All of these efforts were unsuccessful. Although Krengel's notice of appeal and her requests for stays were not filed as soon as possible, the lack of appellate review prior to expiration of the permanent injunction was due simply to the duration of the legal process. In addition, to decline to exercise appellate review would leave open the possibility that Krengel might, in the near future, be in the same position again if the city resumes legal action against her.

Thus, we conclude that Krengel's appeal is not moot despite the expiration of the permanent injunction.

## II.

Krengel's primary argument is that the Public Nuisance Law requires a court to find that two incidents of a statutorily defined public nuisance occurred within the previous 12 months and that there is no such proof in this case. Krengel's argument requires that we construe the Public Nuisance Law. Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998).

## A. Statutory Framework

Sections 617.80 through 617.87 of the Minnesota Statutes provide a means by which a city, a county, or the state may abate a public nuisance. The statute is known as the "Public Nuisance Law." *City of Minneapolis v. Fisher,* 504 N.W.2d 520, 522–27 (Minn.App.1993), *review denied* (Minn. Sept. 30, 1993). The statute defines "public nuisance" by listing nine types of activities, including certain conduct relating to prostitution, gambling, controlled substances, unlicensed and un-

lawful sales of alcoholic beverages, and firearms. Minn.Stat. § 617.81, subd. 2(a)(1), (2), (5), (6), (7), (8) (2006). As is relevant to this case, the statute provides:

> For purposes of sections 617.80 to 617.87, a public nuisance exists upon proof of two or more separate behavioral incidents of one or more of the following, committed within the previous 12 months within the building:
>
> . . . .
>
> (3) maintaining a public nuisance in violation of section 609.74, clause (1) or (3); [1] [and]
>
> (4) permitting a public nuisance in violation of section 609.745; [2] . . . .

Minn.Stat. § 617.81, subd. 2(a).

The Public Nuisance Law sets forth both substantive criteria and procedural requirements for litigation involving alleged public nuisances. There are four steps in the process of obtaining a permanent injunction to abate a public nuisance under the Public Nuisance Law.

First, if a city (or other governmental entity authorized by Minn.Stat. § 617.80, subd. 9 (2006), to invoke the Public Nuisance Law) has reason to believe that a nuisance is being maintained, the city sends written notice to the owner of such a property and all other interested persons. Minn.Stat. § 617.81, subd. 4(a). Among other requirements, the notice must "state that a nuisance as defined in subdivision 2 is maintained or permitted," must "summarize the evidence" of a nuisance, and must "inform the recipient that failure to

abate the conduct ... could ... result in enjoining the use of the building for any purpose for one year." Minn.Stat. § 617.81, subd. 4(b)(1)-(3). This written notice is a prerequisite to a civil action in district court and must be served on a property owner and all interested persons at least 30 days in advance of a civil action. Minn.Stat. § 617.82(c) (2006).

Second, the city commences a civil action in district court. The city may do so only if the "prosecuting attorney has cause to believe that a nuisance described in section 617.81, subdivision 2, exists." Minn.Stat. § 617.82(c). If, within 30 days after service of the prior notice, the recipient of a notice has abated the nuisance or has entered into an abatement plan and remains in compliance with it, the city may not file a nuisance action in district court. Minn. Stat. § 617.82(a). But if there is an abatement plan and the recipient "fails to comply with the agreed abatement plan," the governmental entity may commence the action in district court. Minn.Stat. § 617.82(b).

Third, the city obtains a hearing on its motion for a temporary injunction and presents evidence in support of its motion. "Upon proof of a nuisance described in section 617.81, subdivision 2, the court shall issue a temporary injunction." Minn. Stat. § 617.82(c). The temporary injunction "must describe the conduct to be enjoined." *Id.*

Fourth, the city requests a permanent injunction and submits additional evidence,

---

1. Section 609.74(1) provides that it is a crime if a person "maintains or permits a condition which unreasonably annoys, injures or endangers the safety, health, morals, comfort, or repose of any considerable number of members of the public." Minn.Stat. § 609.74(1) (2006). Section 609.74(3) provides that it is a crime if a person is "guilty of any other act or omission declared by law to be a public nui-

sance and for which no sentence is specifically provided." *Id.* § 609.74(3) (2006).

2. Section 609.745 provides that a person "having control of real property permits it to be used to maintain a public nuisance or lets the same knowing it will be so used is guilty of a misdemeanor." Minn.Stat. § 609.745 (2006).

if any, in support of that request. "Upon proof of a nuisance described in section 617.81, subdivision 2, the court shall issue a permanent injunction and enter an order of abatement...." Minn.Stat. § 617.83 (2006). As with a temporary injunction, a permanent injunction "must describe the conduct permanently enjoined." *Id.* As a general rule, "The order of abatement must direct the closing of the building or a portion of it for one year...." *Id.*; *Fisher*, 504 N.W.2d at 524.

## B. Meaning of "Within the Previous Twelve Months"

In this case, the district court found that Krengel previously had pleaded guilty to criminal charges of public nuisance, in violation of sections 609.74 and 609.745, for incidents that occurred on November 14, 2004, and April 10, 2005. The district court also found that "nine different incidents of public nuisance" occurred between July 2004 and July 2005.

Krengel argues that the district court's permanent injunction was improperly issued because the alleged public nuisance was not "ongoing" when the district court issued the permanent injunction. If an alleged nuisance is a static condition (such as, for example, an unlawful junkyard or the day-to-day operation of an illicit business), its presence is continuous so that it is reasonably clear whether the alleged condition is ongoing. But if the alleged nuisance is episodic, consisting of discrete incidents, as is the alleged nuisance at Krengel's property, it is less clear whether the alleged condition is ongoing. Yet the statute contains a means of resolving the question; it provides that "a public nuisance exists upon proof of two or more separate behavioral incidents ... committed within the previous 12 months." Minn. Stat. § 617.81, subd. 2(a). The issue at the

core of this case is the meaning of the phrase "within the previous 12 months."

Krengel urges us to interpret section 617.81, subdivision 2, to require proof of two "behavioral incidents" occurring within the 12 months preceding the city's request for a permanent injunction. The city, on the other hand, contends that the 12-month period should be measured from the date on which the city served written notice of intent to seek injunctive relief pursuant to section 617.81, subdivision 4. The city sent its first notice on July 29, 2005, and its second notice on June 27, 2006. The city argues that the evidence offered to support the permanent injunction is sufficient because there were multiple incidents of nuisance activity in the 12-month period preceding the first notice.

If a statute is reasonably susceptible of more than one meaning, it is ambiguous. *American Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn.2001). But if "a statute's meaning is plain, judicial construction is neither necessary nor proper." *Occhino v. Grover*, 640 N.W.2d 357, 359 (Minn.App.2002) (citing *American Tower*, 636 N.W.2d at 312), *review denied* (Minn. May 28, 2002). In that event, when "the language of a statute is plain, that meaning is applied as a manifestation of legislative intent." *Glacial Plains Coop. v. Hughes*, 705 N.W.2d 195, 197 (Minn.App.2005).

The requirement that two or more behavioral incidents have occurred "within the previous 12 months" is contained in section 617.81, subdivision 2, which is a reference point for several other sections of the Public Nuisance Law. For example, the provision that authorizes a permanent injunction requires "proof of a nuisance described in section 617.81, subdivision 2." Minn.Stat. § 617.83. Section 617.81, subdivision 2, in turn, states that "a public nuisance exists upon proof of two or more separate behavioral incidents ... commit-

ted within the previous 12 months." The use of the word "proof" in section 617.81, subdivision 2, and in section 617.83 demonstrates that the relevant event for purposes of measuring 12 months is the hearing on a city's request for a permanent injunction. That is when the city is required to offer its "proof" of a nuisance. This conclusion follows naturally from the principle that words and phrases of a statute should be given their ordinary meaning, and the various sections of a statute must be read together to give a whole act context. *American Tower*, 636 N.W.2d at 312; *Glen Paul Court Neighborhood Ass'n v. Paster*, 437 N.W.2d 52, 56 (Minn.1989). Furthermore, the word "exists" appears in the present tense, which requires that the nuisance not have been abated or otherwise resolved at the time of the city's proof. *See Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999) (stating that rules of grammar apply when determining meaning of statute). Thus, the statute requires a city or other governmental entity to prove that a nuisance exists at the time of the hearing on a request for a permanent injunction, which requires proof of two or more incidents of statutorily defined nuisance activity within the 12–month period preceding the hearing.

The city's argument for a contrary interpretation of the statute is unpersuasive because it ignores the connection between section 617.83 and section 617.81, subdivision 2. As the supreme court recently stated, when words of a particular statutory provision are "used elsewhere in the statute," they "furnish authoritative evidence of the legislature's intent and meaning," and a statute should be interpreted "in light of its surrounding sections, in order to avoid conflicting interpretations." *All Parks Alliance for Change v. Uniprop Manufactured Hous. Communities Income Fund*, 732 N.W.2d 189, 193–94 (Minn.2007). Furthermore, the city's argument fails to identify any statutory language that ties the 12–month period solely to the written notice. We do not suggest that the 12–month requirement does *not* apply to the written notice required by section 617.81, subdivision 4. We simply respond to Krengel's argument by concluding that the 12–month requirement applies to the hearing on the request for a permanent injunction, an interpretation that is made plain by the common usage of the word "proof" in section 617.83 and section 617.81, subdivision 2. We are appropriately "attentive" to the text of the statute "because statutory text is all that is enacted into law." *Klein Bancorporation, Inc. v. Commissioner of Revenue*, 581 N.W.2d 863, 868 (Minn.App.1998), *review denied* (Minn. Sept. 22, 1998). Thus, there is no reason to refer to extrinsic sources of information to divine the legislature's intent.

## C. Application of Public Nuisance Law to Krengel

■ The city sought to prove the existence of a public nuisance based on the episodic disturbances caused by Krengel and her guests rather than a static physical condition affecting her real property. The district court did not find that two or more behavioral incidents had occurred at Krengel's home within the 12 months preceding the permanent injunction hearing. In fact, the city's evidence was too stale to satisfy the 12–month requirement. The last of the "separate behavioral incidents" of statutorily defined nuisance activity occurred no later than July 12, 2005, which is approximately 15 months before the October 17, 2006, hearing on the city's request for a permanent injunction. Thus, the city could not prove that "a public nuisance exist[ed]" at the time of the hearing on the request for a permanent injunction because it could not offer "proof of two or

more separate behavioral incidents ... committed within the previous 12 months." Minn.Stat. § 617.81, subd. 2. Therefore, the statute did not provide a legal basis for the district court's permanent injunction.

 The city makes two alternative arguments. First, the city argues that the abatement plan stayed the operation of the statute and tolled the running of the 12-month period. Although the statute expressly addresses abatement plans, there simply is no provision in the statute for staying or tolling the statutory procedures while an abatement plan is in force. It is true that a city may not commence a civil action if a person is in compliance with an abatement plan. Minn.Stat. § 617.82(a). But it does not follow that if a person does not comply with an abatement plan, a city may proceed with a civil action without regard for whether a statutorily defined nuisance still exists. The statute expressly permits a city to commence a civil action if a property owner "fails to comply with the agreed abatement plan." Minn.Stat. § 617.82(b). But the statute states that, in that event, the city may "initiate a complaint for relief in the district court *consistent with paragraph (c)*." Minn.Stat. § 617.82(b) (emphasis added). Section 617.82(c), in turn, refers back to section

617.81, subdivision 2, the provision that states that "a public nuisance exists upon proof of two or more separate behavioral incidents ... committed within the previous 12 months." Minn.Stat. § 617.81, subd. 2(a). Thus, when a property owner fails to comply with an abatement plan, a city is permitted to proceed with a civil action for injunctive relief, but the city must do so pursuant to the ordinary procedures and requirements of the Public Nuisance Law.[3]

 Second, the city argues that Krengel's violations of the abatement plan, in and of themselves, justified the district court's issuance of the permanent injunction. The language of the abatement plan executed by Krengel and the city does not support the city's argument. Rather, the abatement plan, like section 617.82(c), refers the parties back to the Public Nuisance Law. The final paragraph of the abatement plan states that "any violation of the terms and conditions of the Abatement Plan will allow the City Council to pursue injunctive action *as stated in the Notice of Injunctive Action*." (Emphasis added.) Both of the city's notices, in turn, make multiple references to section 617.81. As previously discussed, section 617.81,

---

**3.** The dissent reasons that there was "an ongoing nuisance" at Krengel's property because of "the continuous existence of a festering set of circumstances" such that Krengel "maintained and continued to 'maintain'—without abatement—an 'incident' in the form of a 'condition which unreasonably annoys, injures or endangers the safety, health, morals, comfort, or repose of any considerable number of members of the public.'" *See infra* p. 347 (quoting Minn.Stat. § 609.74). This statement ignores the requirement that the city prove "separate behavioral incidents" of *statutorily defined* nuisance activity. Minn. Stat. § 617.81, subd. 2. The statutory definition of a public nuisance does not encompass the mere possession or consumption of alcoholic beverages. *See id.*, subd. 2(a). Further-

more, the mere potential, propensity, or predisposition to engage in behavior that might constitute a public nuisance cannot substitute for the "separate behavioral incidents" that are required by the statute.

The dissent also reasons that Krengel's "noncompliance with the abatement plan perpetuates the nuisance" that the city had identified in its prior notice. *See infra* p. 347. As far as the Public Nuisance Law is concerned, the abatement plan was successful; it led to the elimination of the statutorily defined nuisance that previously existed. The abatement plan did not resolve all issues between the city and Krengel only because the plan imposed a standard of conduct that was significantly more stringent than the statutory standard.

subdivision 2, requires "proof of two or more separate behavioral incidents ... committed within the previous 12 months." Minn.Stat. § 617.81, subd. 2(a). Thus, in entering into the abatement plan, Krengel merely agreed that, in the event of a breach, the city would be free to seek an injunction pursuant to the statute, but nothing in the abatement plan altered the statutory requirements of an action for injunctive relief in that event.[4]

## D E C I S I O N

Krengel's appeal presents a justiciable controversy. Although the permanent injunction has expired, the parties' dispute is capable of repetition and likely would evade review. Thus, we deny the city's motion to dismiss the appeal as moot.

The district court erred in issuing a permanent injunction. The district court did not find that the city had proved that two or more separate behavioral incidents

of statutorily defined nuisance activity occurred within the 12–month period preceding the hearing on the city's request for a permanent injunction. The incidents on which the city's action is based occurred no later than 15 months before the hearing. Thus, a public nuisance did not exist at the time of the hearing on the city's request for a permanent injunction. Furthermore, the abatement plan did not permit the city to obtain a permanent injunction based on Krengel's violation of the plan. Thus, we vacate the permanent injunction.

**Vacated; motion denied.**

Dissenting, CRIPPEN, Judge.

CRIPPEN, Judge (dissenting).

Minnesota's 1987 nuisance-abatement statute prescribes a process leading to a mandatory district court injunction that deprives the owner of use of her property for one year. Minn.Stat. § 617.81–.83 (2006).[5] I respectfully disagree with the

---

4. The dissent correctly states that "nothing in the statute stands in the way of an agreement like the one formulated by these parties." *See infra* p. 346. It also may be said that the city and Krengel were not limited to the specific terms of the abatement plan to which they agreed. Freedom of contract permitted them to agree to alternative terms, including a shorter time period, which likely would have allowed the city to commence legal action soon enough to ensure that the incidents identified in the first notice were sufficiently current at the time of the hearing on the request for a permanent injunction. As it happened, Krengel first breached the agreement approximately one month after she signed it. The city then had the option, pursuant to section 617.82(b), to proceed with a civil action. Furthermore, if the incidents identified in a city's notice become too stale, the statute does not prohibit a city from providing an additional notice, and the statute does not prohibit a city from amending or supplementing its complaint, *see* Minn. R. Civ. P. 15.01, 15.04.

5. These statutory provisions are simply structured. The topic of the act is the matter of

obtaining an injunction or order of abatement; "[i]n order to obtain" this relief, these statutes "must be followed." Minn.Stat. § 617.81, subd. 1. Section 617.81 defines the acts constituting a nuisance at subdivision 2 and delineates the notice requirements at subdivision 4. Minn.Stat. § 617.82, which is the center of controversy in this case, describes the procedure following a notice:

(a) If the recipient of a notice under section 617.81, subdivision 4, either abates the conduct constituting the nuisance or enters into an agreed abatement plan within 30 days of service of the notice and complies with the agreement within the stipulated time period, the prosecuting attorney may not file a nuisance action on the specified property regarding the nuisance activity described in the notice.
(b) If the recipient fails to comply with the agreed abatement plan, the prosecuting attorney may initiate a complaint for relief in the district court consistent with paragraph (c).
(c) Whenever a prosecuting attorney has cause to believe that a nuisance described in section 617.81, subdivision 2, exists with-

majority's construction and application of these statutory provisions, and I would affirm the district court's decision. For alternative reasons, in my opinion, the court was obligated to provide the prescribed statutory relief in the circumstances of this case. First, proof of appellant's failure to comply with the 2005 agreement of the parties demonstrates that she continues to maintain, without abatement, a nuisance as defined by law; and that this condition, in and around her home, on this record, has existed for approximately 15 years. Alternatively, after appellant failed to comply with the plan, respondent was entitled to injunctive relief upon proof of the disturbances stated in the nuisance notice that was issued in 2005 to initiate these proceedings. For these reasons, appellant did not suffer an unwarranted loss of use of her property under the 2006 district court injunction orders.

Municipal action under the statute unfolds in prescribed stages. When evidence surfaces that gives the prosecuting authority "reason to believe that a nuisance is maintained or permitted," the prosecutor is authorized to serve a written notice that states, among other things, a summary of the evidence prompting the prosecutor's belief. Minn.Stat. § 617.81, subd. 4. Significantly, this notice advises the recipient of three options: (1) abatement of the nuisance within 30 days; (2) "otherwise resolv[ing] the matter" with the prosecutor in the same time frame; or (3) suffering "the filing of a complaint for relief in dis-

trict court that could, among other remedies, result in enjoining the use of the building for any purpose for one year." *Id.*, subd. 4(b).

The recipient's timely and adequate response to the notice—when she "abates the conduct constituting the nuisance" or "enters into an agreed abatement plan ... and complies with the agreement within the stipulated time period"—eliminates the prosecutor's right to seek a judicial injunction "regarding the nuisance activity described in the notice." Minn.Stat. § 617.82(a).

Thus, the statute gives the notice recipient two choices "regarding the nuisance stated in the notice," abate this nuisance or "resolve" this nuisance with an "agreed abatement plan." The statute does not limit the term or the nature of the steps that constitute abatement under the plan; in other words, nothing in the statute stands in the way of an agreement like the one formulated by these parties, lasting for a year and calling for correction of conduct underlying the occurrence of nuisance events rather than the cessation of those event. *Id.*

The majority sees the evident pattern of the statute upset at this point by Minn. Stat. § 617.82(c), which states that the prosecutor may proceed to seek a judicial injunction when there is "cause to believe that a nuisance described in section 617.81, subdivision 2, exists." Minn.Stat. § 617.82(c).

---

in the jurisdiction the attorney serves, the prosecuting attorney may by verified petition seek a temporary injunction in district court in the county in which the alleged public nuisance exists, provided that at least 30 days have expired since service of the notice required under section 617.82, subdivision 4. No temporary injunction may be issued without a prior show cause notice of hearing to the respondents named in the petition and an opportunity for the

respondents to be heard. Upon proof of a nuisance described in section 617.81, subdivision 2, the court shall issue a temporary injunction. Any temporary injunction issued must describe the conduct to be enjoined.

Finally, the use of "shall" in Minn.Stat. § 617.83 requires the district court to issue an injunction upon proof of a nuisance. *See* Minn.Stat. § 645.44, subd. 16 (2006) (stating " '[s]hall' is mandatory").

The parties in this case adopted a one-year abatement plan. As a result, when appellant indisputably "failed to comply" with the plan, a year had passed and appellant asserted that the unabated nuisance did not in fact "exist" because "behavioral incidents" had not been "committed within the previous 12 months." Minn.Stat. § 617.81, subd. 2 (defining acts constituting a nuisance).

### A. The Continuing Nuisance

Commission of "behavioral incidents" constituting a nuisance includes "maintaining a public nuisance in violation of section 609.74, clause (1) or (3)." *Id.* The section referred to deals with maintaining or permitting a condition that, inter alia, "unreasonably annoys, injures or endangers" the community. Minn.Stat. § 609.74 (2006). Proof that this condition is maintained is proof that the nuisance exists, thus permitting the prosecutor to seek an injunction as stated in section 617.82(c).

It is reasonable to conclude, under these statutes, that respondent's prosecutor proved and the district court properly determined that there existed on appellant's property, because the abatement plan failed, an ongoing nuisance; the record shows that she maintained and continued to "maintain"—without abatement—an "incident" in the form of a "condition which unreasonably annoys, injures or endangers the safety, health, morals, comfort, or repose of any considerable number of members of the public." *Id.* In my opinion, the continuous existence of a festering set of circumstances that has included 180 police responses over 15 years can reasonably be considered a static, existing nuisance. The abatement plan sought to cure the nuisance conditions; appellant's noncompliance with the abatement plan perpetuates the nuisance that has produced both disturbing affects on neighboring property and investment of substantial municipal police resources.

The legislature anticipated that nuisance-abatement remedies would include injunctions, specifically providing for disuse for a year, and said in passing that there might be "other," unspecified remedies. Minn.Stat. § 617.81, subd. 4(b)(3). But for injunctive remedies, of course, there must be something to enjoin. In the context of this law, there must be some remaining reason to deprive appellant of the use of her property for a year. It is reasonable under the governing statutes to conclude that the district court properly determined the cause for an injunction in this case; the prosecution evidence showed that the nuisance stated in the 2005 notice continued to exist.

### B. Specified Disturbances

Alternatively, if appellant's nuisance is labeled episodic rather than static, it is among reasonable interpretations of the statute to read it as a demand for injunctive relief upon proof of the episodes first stated in the abatement notice.

The original nuisance notice is permitted when a prosecutor "has reason to believe that a nuisance is maintained or permitted." Minn.Stat. § 617.81, subd. 4(a). The notice must specify the nuisance that is maintained. *Id.* If the parties choose an abatement agreement and the recipient complies with this agreement, "the prosecuting attorney may not file a nuisance action ... regarding the nuisance activity described in the notice." Minn.Stat. § 617.82(a). The prosecutor may seek an injunction upon "cause to believe" that a nuisance "exists." *Id.,* § 617.82(c).

Read together, the provisions of Minn. Stat. § 617.82 are in harmony: If the notice recipient abates or resolves the nuisance, the prosecutor must take no action; if the notice recipient fails to abate the

nuisance or to comply with the abatement plan, the prosecutor may act. Respondent contends that the existing nuisance regards the activities described in the original notice. The serious nuisance recited in 2005 is the thread running through every stage of action in this case, and it has not been abated as provided by law. In this statutory scheme of action, the abatement plan, when it is chosen by the parties, has the nature as respondent has characterized it, a tolling of abatement-enforcement steps while efforts are made to voluntarily address the nuisance problem reported earlier.

Adding weight to respondent's contention, Minn.Stat. § 617.82(c), the same subsection that says the prosecutor may seek injunctive relief when a nuisance exists, expressly provides that his burden is for "proof of a nuisance described in section 617.81, subdivision 2." As the majority observes, the section defining nuisances speaks of those that exist, determined by examining acts committed in the prior year; the majority states the view that the year must be the period immediately before the proof. But as respondent suggests, the statute fails to resolve, upon failure of an abatement plan, whether the "nuisance" addressed in the stated burden of proof is the nuisance stated in the original notice, as it then existed, or another nuisance currently observed. It may be either without offending the words stated and the scheme of action provided in the statute.

## C. Resolving Ambiguities

The language of the public nuisance abatement act fails to clearly define terms and prescribe the process, creating ambiguities that must be resolved by established standards on statutory construction. It is not clear from the language of Minn. Stat. § 617.82 whether new episodes of

disturbance must exist or whether failure to comply with an abatement plan perpetuates the former nuisance—proven either by showing the failure to comply or by also showing the original disturbances. Not surprisingly, when respondent provided appellant with a second notice immediately before court proceedings, the prosecutor fully stated both the precipitating disturbances and appellant's specific failures respecting the abatement plan. In my opinion, there are dominant reasons to resolve these ambiguities in the fashion underlying the district court's deliberations and findings of fact:

(1) The nuisance-abatement statute contemplates a series of steps that govern the parties "regarding the nuisance activity described in the (initial) notice." Minn. Stat. § 617.82(a). These include an abatement plan that might reasonably last for a year and reasonably deal with explosive conditions that must be remedied to end the risk of continuous disturbances. It does mischief to this statute to interpret and apply it in a fashion that alters its usefulness. We are to construe the statute "to give effect to all its provisions." Minn. Stat. § 645.16. And we are to take into account the need for the law, the mischief it aims to remedy, the object it aims to attain, and the consequences of a particular interpretation. *Id.,* § 645.16(1), (3), (4), (6). The object of construction of laws is to effectuate the legislative intent. *Id.*; Minn.Stat. § 645.17 (2006).

(2) The statutory tie between the initial notice and the subsequent injunction action is ratified by the chosen language of the parties in their 2005 abatement plan. They expressly anticipated, when addressing the July 2005 abatement notice and the nuisance it reported, that the prosecutor could seek an injunction in the event that appellant failed to comply with the plan. In the same instrument, appellant

committed herself to remedial steps that did not occur; she did not merely agree to be sure that no disturbance occurred during a one-year waiting period. Respondent proceeded in this case as anticipated in (1) the advisory stated in the 2005 abatement notice, (2) the statutory provision on noncompliance, and (3) the language on consequences stated in the abatement plan itself. The understanding and the conduct of the parties suggests the common meanings of the statutes, which are to be construed "according to their common and approved usage." Minn.Stat. § 645.08(1) (2006).

(3) In a practical sense, the demand for current disturbances creates barriers on the future formulation of abatement plans, adding to the legislative scheme the urging that abatement plans either should be short in duration or should only call for a cessation of disturbances. These are barriers that may be adverse to the interests of both municipal authorities and notice recipients. The prosecutor in this case is penalized for what is evidently a display of sound prosecutorial discretion. Rather than attempting to monitor the behavior of intoxicated guests in appellant's home, the prosecutor attempted to understand a problem and to attempt to deal with it most effectively by addressing its roots and choosing a reasonable time to address the problems. The agreement was a natural, reasoned, and laudatory approach of both parties to the nuisance problem. It is axiomatic that we are limited by what the legislature has said, having no freedom to add to or alter its enactments.

(4) Although the consideration can rightfully be seen as secondary to others already stated, "the legislature intends to favor the public interest as against any private interest." Minn.Stat. § 645.17(5). The statute invites the interpretation chosen by the district court, and this is consis-tent with an important public interest in property uses that are not threatening to others.

(5) Finally, deference to the public interest goes beyond the protection of municipal efforts to control public nuisances. The injunction challenged on this appeal, as mandated by the statute, deprived appellant of her property, and she has candidly disclosed to us in motion documents that she anticipates the collateral consequence of unrequited damage if the matter is not reviewed. It is equally evident that appellant anticipates proceedings to ascertain damages in the event we determine that the city was not entitled to the injunction that the district court granted. In my opinion, appellant has not met her burden to show that she is entitled to an award of damages on a theory of wrongful taking; the injunction sought and obtained by respondent was warranted by law.

For the reasons stated, I respectfully dissent from the majority decision.