CITY OF WEST ST. PAUL, Appellant,

v.

Alice Jane KRENGEL, Respondent.

No. A07–310.

Supreme Court of Minnesota.

July 16, 2009.

Pierre N. Regnier, Susan Steffen Tice, Jardine, Logan & O'Brien, P.L.L.P., Lake Elmo, MN, for appellant.

Michael Hagedorn, Southern Minnesota Regional Legal Services, Inc., St. Paul, MN, for respondent.

Susan L. Naughton, League of Minnesota Cities, St. Paul, MN, for amicus curiae League of Minnesota Cities.

## OPINION

MEYER, Justice.

In 2005, appellant City of West St. Paul entered into an abatement plan with respondent Alice Krengel following multiple incidents of public nuisance activity at her home. Although there was no further nuisance activity, Krengel did violate the abatement plan. Based on the abatement plan violations and the prior nuisance activity, the City sought an injunction in 2006 that would bar Krengel from occupying her home. Citing the prior nuisance activity as proof of a nuisance under the Public Nuisance Law, Minn.Stat. §§ 617.80–.87 (2006), the district court enjoined Krengel from occupying her home for a one-year period. On appeal, a divided panel of the court of appeals concluded that the district court erred in issuing the permanent injunction. *City of W. St. Paul v. Krengel,* 748 N.W.2d 333, 345 (Minn. App.2008). We affirm, holding that once the conduct constituting a public nuisance has been abated, a prosecuting attorney does not have the authority to file a nuisance action.

Krengel owns a house on Allen Avenue in the City of West St. Paul, where she has resided for over 20 years. According to the district court's findings, Krengel's neighbors had been "subjected to intoxicated persons at her home, yelling, arguing with one another, and screaming obscenities, at all hours of the days and nights." The police received 29 reports regarding the property from July 2004 through July 2005. Krengel twice pleaded guilty to criminal charges of public nuisance for incidents that occurred on November 14, 2004, and April 10, 2005. The district court found that Krengel's alcoholism is "at the root of her behavior."

On July 29, 2005, the City sent a letter advising Krengel that she had maintained or permitted a nuisance at her residence for an extended period of time. The letter described 13 specific, objectionable incidents. Among them were several incidents in which Krengel's guests were taken to a detoxification unit or to a hospital because of high blood-alcohol content; an incident in which two intoxicated males assaulted one another with hammers; and an incident in which two persons argued loudly in Krengel's yard while pushing and slapping each other. The letter indicated that if Krengel did not either abate the nuisance or enter into an agreed abatement plan within 30 days, "the City may file a complaint for relief in district court that could, among other remedies, result in enjoining the use of [her] residence for any purpose *for one year.*"

After receiving this letter, Krengel contacted the City and agreed to enter into an abatement plan. The City Council adopted the abatement plan on August 22, 2005. The operative terms of the abatement plan (1) prohibited Krengel from using alcohol or keeping alcohol at the property; (2) prohibited Krengel from allowing more than three unrelated people to reside at the property; (3) permitted certain police officers to make random visits to the property; (4) permitted certain police officers to administer random preliminary breath tests to Krengel; and (5) required Krengel to attend 90 meetings of Alcoholics Anonymous within 120 days. The abatement plan was to be in effect for one year and provided that "any violation of the terms and conditions of the Abatement Plan will allow the City Council to pursue injunctive action."

During the next year, there was no further nuisance activity at Krengel's property; however, the City did identify several violations of the abatement plan. Those violations included Krengel bringing alcohol into her home; another person bringing alcohol into Krengel's home after which an odor of alcohol was detected on Krengel; and Krengel refusing to admit investigating officers for inspections.

On June 27, 2006, the City sent another letter advising Krengel that she had maintained or permitted a nuisance at her residence for an extended period of time. The letter summarized the City's evidence of four violations of the abatement plan and also recited the same 13 incidents of public nuisance activity described in the first notice sent in July 2005. The letter informed Krengel that the City could seek injunctive relief if she did not either abate the nuisance or enter into a new abatement plan within 30 days. The letter also informed Krengel that the City Council already had authorized a district court action to enjoin the use of her residence.

In response to this letter, Krengel offered to extend the abatement plan for an additional period of time, but the City rejected her offer. On July 31, 2006, the City filed an action for a temporary injunction in Dakota County District Court. On August 10, the district court filed an order granting the temporary injunction, which

prohibited Krengel from residing at the property, engaging in public nuisance activity at the property, and entering onto the property without prior approval of the police. The order required Krengel to vacate the property by August 5. The district court issued a permanent injunction on November 20, 2006. The order enjoined Krengel from occupying her home for one year from the date of the temporary injunction, which would be August 10, 2007.

On July 26, 2007, the City asked the district court to extend the injunction. The district court denied the request because the City had not provided Krengel with written notice alleging new nuisance activity. Krengel returned to her home on August 10, 2007.[1]

On appeal, Krengel challenged the permanent injunction. The court of appeals concluded that the district court erred in issuing the permanent injunction. *Krengel*, 748 N.W.2d at 345.[2] In reaching this conclusion, the court of appeals analyzed the statutory provisions relating to injunctions, which require proof of two or more nuisance incidents "within the previous 12 months." Minn.Stat. § 617.83 (2008); Minn.Stat. § 617.81, subd. 2(a) (2006). The court of appeals determined that because there was no evidence of nuisance activity at Krengel's property in the 15 months prior to the hearing, a public nuisance did not exist when the permanent injunction was issued. *Krengel*, 748 N.W.2d at 343–44. We granted the City's petition for further review to address the interpretation of the Public Nuisance Law.[3]

I.

We have been asked to decide a prosecuting attorney's authority to seek injunctive relief under the Public Nuisance Law when undisputed nuisance activity existed at a property, which led to an abatement plan, and the property owner abated the nuisance activity but violated the

1. Krengel made three unsuccessful attempts to stay enforcement of the injunction while she pursued an appeal. First, the court of appeals denied Krengel's motion for a writ of prohibition. Krengel then filed a motion to stay enforcement of the permanent injunction pending appeal, but the district court denied that motion, and the court of appeals affirmed on appeal.

2. Although the permanent injunction had expired by the time of the court of appeals' decision, the court of appeals concluded that Krengel's appeal from the permanent injunction was not moot. *Krengel*, 748 N.W.2d at 340. Although the City has not raised a mootness issue here, this does not eliminate the issue from our consideration. "As a constitutional prerequisite to the exercise of jurisdiction, we must consider the mootness question even if ignored by the parties." *In re Schmidt*, 443 N.W.2d 824, 826 (Minn.1989). Although we cannot grant relief from the injunction in this case, we have recognized that mootness is a flexible doctrine, and we will not dismiss a matter as moot if the case

"implicates issues that are capable of repetition, yet likely to evade review," *Kahn v. Griffin*, 701 N.W.2d 815, 821 (Minn.2005). We agree with the court of appeals' conclusion that this appeal is not moot despite the expiration of the permanent injunction, because (1) Krengel tried, but was unable to obtain appellate review of the permanent injunction before it expired; and (2) Krengel might, in the near future, be in the same position again if the City resumes legal action. *Krengel*, 748 N.W.2d at 339–40.

3. At oral argument the City contended that the terms of the abatement plan agreement allowed it to pursue injunctive relief. Specifically, in the abatement plan Krengel agreed "that any violation of the terms and conditions of the Abatement Plan will allow the City Council to pursue injunctive action...." We do not reach this issue because it was not raised in the City's petition for review of the court of appeals' decision. *See Hoyt Props., Inc. v. Prod. Res. Group, L.L.C.*, 736 N.W.2d 313, 317 n. 1 (Minn.2007).

abatement plan. The resolution of this issue involves the interpretation of the Public Nuisance Law, Minn.Stat. §§ 617.80–.87. Statutory interpretation is a question of law that we review de novo. *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn.2001). The object of statutory interpretation is to effectuate and ascertain the intention of the legislature. Minn.Stat. § 645.16 (2008). We interpret a statute, whenever possible, to give effect to all of its provisions; we also read and construe a statute as a whole and "interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000).

The Public Nuisance Law sets forth substantive criteria and procedural requirements for injunctions. Under the substantive criteria, a public nuisance "exists upon proof of two or more separate behavioral incidents" that have been "committed within the previous 12 months within the building." Minn.Stat. § 617.81, subd. 2(a) (2006).[4] As relevant here, "behavioral incidents" include:

- maintaining or permitting a condition that unreasonably annoys, injures or endangers the safety, health, morals, comfort, or repose of any considerable number of members of the public, *see* Minn.Stat. § 617.81, subd. 2(a)(3);[5] and

- permitting property to be used to maintain a public nuisance, or renting the property knowing it will be used to maintain a public nuisance, *see* Minn. Stat. § 617.81, subd. 2(a)(4).[6]

As for the procedural requirements, the Public Nuisance Law authorizes a prosecuting attorney to bring an injunction action to seek abatement of a public nuisance. *See* Minn.Stat. § 617.80, subd. 9 (2008) (defining a "prosecuting attorney" as "the attorney general, county attorney, city attorney, or attorney serving the jurisdiction where the nuisance is located"). The prosecuting attorney must provide written notice to the owner of the property and any interested parties before initiating an action seeking abatement of the nuisance. Minn.Stat. § 617.81, subd. 4(a) (2008). The written notice must: (1) state

---

**4.** The legislature amended Minn.Stat. § 617.81, subd. 2, in 2008 and 2009. The 2008 amendments provide that for certain behavioral incidents involving prostitution, controlled substances, or dangerous weapons, a public nuisance can exist upon proof of only one incident committed within the previous twelve months. Act of Apr. 24, 2008, ch. 218, § 1, 2008 Minn. Laws 536, 536–37. The 2009 amendments provide for a new category of public nuisance activity related to "unlawful sales or gifts of alcoholic beverages." Act of May 20, 2009, ch. 123, § 17 (codified at Minn.Stat. § 617.81, subd. 2(a)(viii)). Although the amendments did not substantively change the requirements of Minn.Stat. § 617.81, subd. 2, at issue in this case, we cite to the 2006 version of that subdivision, as it was the language in effect when the underlying events occurred.

**5.** Minnesota Statutes § 617.81, subd. 2(a)(3), references "maintaining a public nuisance in

violation of section 609.74, clause (1) or (3)," which in turn provides that a person is guilty of maintaining a public nuisance, which is a misdemeanor, if the person intentionally "maintains or permits a condition which unreasonably annoys, injures or endangers the safety, health, morals, comfort, or repose of any considerable number of members of the public," or "is guilty of any other act or omission declared by law to be a public nuisance and for which no sentence is specifically provided."

**6.** Minnesota Statutes § 617.81, subd. 2(a)(4), references "permitting a public nuisance in violation of section 609.745," which in turn provides that a person is guilty of a misdemeanor if the person has control of real property and "permits it to be used to maintain a public nuisance or lets the same knowing it will be so used."

that a nuisance, as defined by Minn.Stat. § 617.81, subd. 2, is maintained or permitted and "specify the kind or kinds of nuisance being maintained or permitted"; (2) "summarize the evidence that a nuisance is maintained or permitted in the building, including the date or dates on which nuisance-related activity or activities are alleged to have occurred"; and (3) inform the recipient that the failure to abate the conduct or otherwise resolve the matter within 30 days of the notice may result in the filing of a complaint that could result, among other remedies, in the loss of the use of the building for one year. Minn. Stat. § 617.81, subd. 4(b).

■ The Public Nuisance Law contemplates two options for the property owner[7] to avoid a nuisance action once the prosecuting attorney has provided statutory notice. The first option is conduct abatement. If the property owner "abates the conduct constituting the nuisance," the prosecuting attorney may not file a nuisance action regarding the nuisance activity described in the notice. Minn.Stat. § 617.82(a) (2008). The second option is an abatement plan. The prosecuting attorney may not file a nuisance action if the property owner enters into an abatement plan and "complies with the agreement within the stipulated time period." *Id.* If the property owner fails to abate the conduct or fails to comply with the abatement plan, then the prosecuting attorney may by verified petition seek a temporary injunction if the prosecuting attorney "has cause to believe that a nuisance described

in section 617.81, subdivision 2, exists" and "at least 30 days have expired since service of the notice required under section 617.81, subdivision 4." Minn.Stat. § 617.82(c).

"Upon proof of a nuisance described in section 617.81, subdivision 2, the court shall issue a permanent injunction and enter an order of abatement," Minn.Stat. § 617.83 (2008), provided that all the substantive and procedural requirements have been met and the elements constituting the nuisance have been established by clear and convincing evidence, Minn.Stat. § 617.81, subd. 2(c).[8] Generally, "[t]he order of abatement must direct the closing of the building or a portion of it for one year." Minn.Stat. § 617.83.

The parties dispute whether a prosecuting attorney may seek an injunction based on a property owner's violation of the abatement plan when there is no current nuisance activity. The City argues that if the property owner does not comply with the terms of the abatement plan, then Minn.Stat. § 617.82(a) allows the prosecuting attorney to file a nuisance action on the property "regarding the nuisance activity described in the notice." Krengel argues that the failure to comply with an abatement plan does not allow the prosecuting attorney to file a nuisance action unless the violations of the abatement plan perpetuate the nuisance activity. According to Krengel, there is no reason for a nuisance action after the property owner has successfully abated the nuisance, even if the property owner did not fully comply with all the terms of the abatement plan.

7. Because Krengel, the property owner, is the notice recipient at issue here, for ease of reference we will use the term "property owner" in our references to notice recipients.

8. The statutory provision regarding temporary injunctions provides:

No temporary injunction may be issued without a prior show cause notice of hearing to the respondents named in the petition and an opportunity for the respondents to be heard. Upon proof of a nuisance described in section 617.81, subdivision 2, the court shall issue a temporary injunction.

Minn.Stat. § 617.82(c).

■ We conclude that Minn.Stat. § 617.82 plainly prohibits a prosecuting attorney from seeking an injunction if the property owner has abated the nuisance activity described in the notice. Section 617.82(a) specifically states that if the property owner abates the conduct constituting the nuisance, "the prosecuting attorney may *not* file a nuisance action on the specified property regarding the nuisance activity described in the notice."[9] (Emphasis added.) Although section 617.82(b) does provide that the prosecuting attorney "may initiate a complaint for relief" if the property owner fails to comply with the abatement plan, the statute makes clear that such a complaint must be "consistent" with section 617.82(c). Under section 617.82(c), only when the prosecuting attorney has cause to believe that a nuisance "exists" can he or she proceed to seek a temporary injunction. This use of the present tense indicates that the nuisance activity must continue after the initial no-

tice in order to obtain injunctive relief. Therefore, we hold that the abatement of statutorily-defined nuisance activity, as set forth in an injunction notice, prevents the prosecuting attorney from seeking an injunction under the Public Nuisance Law.[10]

## II.

■ Guided by this reading of the Public Nuisance Law, we turn next to whether the district court erred in issuing a permanent injunction that barred Krengel from using her home for a year. Significantly, the City conceded at oral argument that none of the conduct at Krengel's property after she received the initial notice in 2005 meets the statutory definition of "public nuisance." Minn.Stat. § 617.81, subd. 2(a). Therefore, in light of our interpretation of the Public Nuisance Law, we conclude that the district court erred in issuing a permanent injunction.[11]

Affirmed.

9. This reading not only follows the plain language of the statute, but also gives substance to the notice requirement in the statute. Notice, a key element of due process in injunction actions, should fully inform a property owner of the statutory nuisance activity that must be abated in order to prevent injunctive action. *Vill. of Zumbrota v. Johnson*, 280 Minn. 390, 395–96, 161 N.W.2d 626, 630 (1968).

10. The court of appeals held that the plain meaning of the phrase "within the previous 12 months" in Minn.Stat. § 617.81, subd. 2(a), required a prosecuting attorney to provide proof of two or more incidents of statutorily-defined nuisance activity within 12 months of the permanent injunction hearing, not within 12 months of the notice of the nuisance activity. *Krengel*, 748 N.W.2d at 342–43. The court of appeals stated that the use of the word "proof" in sections 617.81 and 617.83 demonstrates that the 12–month period should be measured from when the prosecuting attorney presents "proof" at the hearing on the request for a permanent injunction. 748 N.W.2d at 343. Because we conclude that the Public Nuisance Law does

not allow a prosecuting attorney to seek an injunction after the property owner has abated the nuisance activity described in the notice, we do not reach the issue of the proper interpretation of the phrase "within the previous 12 months" in section 617.81, subd. 2(a).

11. We also note that in the temporary injunction order the district court indicated that the property had two or more incidents of public nuisance activity "between September 2004 and August 2006," a two-year time frame that is not contemplated by the Public Nuisance Law. *See* Minn.Stat. § 617.81, subd. 2. The district court also made findings that the police were continuing to get complaints of "nuisance activity" and that Krengel had not abated that nuisance activity. However, the City received no complaints of conduct that constituted a public nuisance after the initial notice on July 29, 2005—only reports of abatement plan violations. Further, in the permanent injunction order, the district court did not specifically identify any incidents of nuisance activity that took place at Krengel's home after the initial notice—only violations of the abatement plan. These violations con-

ANDERSON, PAUL H., and DIETZEN, JJ., took no part in the consideration or decision of this case.

sisted of reports relating to Krengel's use of alcohol, the presence of alcohol in Krengel's home, and Krengel's refusal to allow the police to enter her home for random inspec-tions. These violations of the abatement plan do not meet the statutory definition of "public nuisance" in Minn.Stat. § 617.81, subd. 2.